**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**JON COHEN,**
*Petitioner,*

*v.*                                                    Case No.: **3:20-cv-4**

**SEC'Y, FLA. DEPT. CORR.**
*Respondent.*

_____/

### PETITION UNDER 28 U.S.C. 2254 FOR WRIT OF HABEAS CORPUS
### BY A PERSON IN STATE CUSTODY

Petitioner, Jon Cohen, by and through undersigned counsel, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, and as a basis in support, states:

1. The judgment of conviction from which Petitioner seeks relief was entered in the Circuit Court of the Fourth Judicial Circuit, Duval County, Florida, case number 2014-CF-1258

2. Judgment of conviction was entered December 3, 2015; sentencing occurred on the same date.

3. Petitioner was sentenced to 15 years prison with a 3-year minimum mandatory pursuant to section 775.087(2)(a), Florida Statutes.

4. Petitioner was charged with a single count of Possession of Firearm by a Convicted Felon, in violation of section 790.23, Florida Statutes.

5. Petitioner pleaded not guilty and proceeded to a jury trial which was conducted October 16, 2015. Petitioner did not testify at any pre-trial hearings.

6. Petitioner took a direct appeal from the judgment and sentence to the Florida First District Court of Appeal, appeal no.: 1D15-5884. His judgment and sentence were affirmed *per curiam* on May 12, 2017. The mandate issued July 7, 2017.

7. Petitioner raised four issues on direct appeal: (1) the trial court abused its discretion by permitting a law enforcement witness to express an opinion regarding the state's principal witness; (2) the trial court abused its discretion by permitting the state to impeach its own witness with extrinsic evidence of another state witness;(3) the trial court erred in denying Petitioner's motion for judgment of acquittal where evidence adduced at trial was insufficient to establish that Petitioner possessed a firearm on the date in question; and (4) trial court's oral denial of

Petitioner's motion for new trial failed to demonstrate whether the court applied the correct legal standard in its evaluation of Petitioner's grounds for new trial.

8.     Petitioner did not seek discretionary review by the Florida Supreme Court from the appellate court's decision affirming his appeal, or certiorari in the United States Supreme Court.

9.     Other than his direct appeal, on May 8, 2018, Petitioner filed a motion for post-conviction relief under Florida Rule of Criminal Procedure 3.850. His motion was filed in the Circuit Court for the Fourth Circuit, Duval County, Florida, under the same case number as his conviction.

10.     Petitioner raised ten grounds in his post-conviction motion, all were ineffective assistance of trial counsel claims: (1) failure to argue to the jury the state's failure to prove that he possessed a firearm as define by section 790.001(6), Florida Statutes; (2) failure to prove to the jury that Petitioner knowingly possessed a firearm as a convicted felon; (3) failure to argue to the jury that the State's evidence was insufficient to prove Petitioner possessed a firearm as a convicted felon because he did not possess a firearm at the time of his arrest; (4) Failure to argue to the jury that the state did not prove that the alleged firearm was a "firearm" as statutorily defined in the Florida; (5) Failure to argue a sufficient motion for judgment of acquittal based on the state's failure to prove the second element of Possession of a Firearm by a Convicted Felon, "knowing possession;" (6) Failure to argue sufficient motion for judgment of acquittal based on state's failure to prove that Petitioner possessed a firearm at the time of his arrest; (7) Failure to hire a firearms expert to prove that Petitioner did not possess a "firearm" as statutorily defined in Florida; (8) Failure to object to improper impeachment of state witness, Ms. Viltz, and failure to object to state's use of Detective's opinion testimony during closing argument; (9) Failure to object to improper prosecutorial comments which deprived Petitioner of his constitutional right to a fair trial; and (10) the cumulative effect of counsel's errors deprived Petitioner of both his right to a fair trial and to the effective assistance of his trial counsel.

11.     Petitioner did not receive a hearing on his post-conviction motion; it was denied summarily on October 12, 2018. He did not file any additional petitions or motions pertaining to his judgment and sentence. He appealed to the Florida First District Court of Appeal from the denial of his post-conviction motion. (Appeal No.: 1D18-4851).

12.     Petitioner's appeal was *per curiam* affirmed on August 29, 2019. He filed a motion for written opinion on September 9, 2019, which was denied on October 17, 2019. The mandate issued on November 7, 2019

13.     Procedural Note: The grounds raised herein were either raised in the state court and are therefore properly exhausted, or are raised under *Martinez v. Ryan,* 566 U.S. 1 (2012), which provides an equitable exception

2

to the *Coleman*[1] doctrine prohibiting ineffective assistance of post-conviction counsel (or lack of post-conviction counsel) from establishing cause to excuse procedurally defaulted claims.

**GROUNDS FOR RELIEF – THIS PETITION**

**GROUND ONE**

INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL FOR FAILURE TO TAKE SUFFICIENT MEASSURES TO CURE VIOLATION OF PETITIONER'S FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS AND EQUAL PROTECTION BASED UPON IMPROPER OPINION TESTIMONY

**Supporting Facts**

Petitioner's Fourteenth Amendment rights to Due Process and Equal Protection were violated when the trial court permitted Detective Only to give his opinion at trial that H.S., the State's principal witness, had not been coached in making his statements to police at the time of incident, and that H.S. was credible. Although trial counsel objected to the admission of this testimony, once the damaging effects of its improper admission became readily apparent, counsel should have renewed his objection and, if not successful, to have then moved for a directed verdict. The failure do so was prejudicially deficient performance that violated Petitioner's Sixth Amendment right to the effective assistance of his counsel.

H.S., (who was ten years old at the time of events he purportedly observed)[2], testified that he remembered the events of that day "a little bit." He did not know the man he described as having a firearm, and although he testified that he later identified the man to police in a photo lineup, this was disproven at trial. Police confirmed that H.S. was never provided with a photo lineup. He could not identify the Petitioner before, or at trial. Ms. Viltz was the only other witness to the conversation between Ms. Daniels and the Petitioner. She was closer, and even according to H.S., she was in a better position than him to observe events. Ms. Viltz testified that she never saw a firearm in the possession of the Petitioner, who she recognized from high school, and she never called the police— there had been no reason to.

H.S.'s credibility was indispensable to the State's case. If the jury were to reject his version of events—the sole proof Petitioner may have possessed a firearm—the only possible verdict in the case would have been acquittal, either on defense motion or by the jury. With Ms. McDaniel deceased at the time of trial for unrelated causes, and

---

[1] *Coleman v. Thompson*, 501 U.S. 722 (1991)(holding that ineffective assistance of counsel in a post-conviction context cannot establish cause to overcome procedural default.).
[2] H.S. was twelve years of age at the time of trial.

with her son, H.S.—the only witness to claim to have seen a man with a gun—Detective Only's testimonial opinion that H.S. was honest and credible bolstered his testimony,  improperly securing Petitioner's conviction. The effect of this error on the jury is also apparent where, during deliberations they asked to review the original complaint filed by Ms. McDaniel at the time she first spoke to police. The jury's desire to compare Ms. McDaniel's version of events with H.S.'s story demonstrates that they struggled with the issue of his credibility. It also supports a conclusion that Detective Only's opinion that H.S. was credible contributed significantly to their guilty verdict. This error represents the kind of fundamental unfairness federal courts are required to remedy. Detective Only's opinion testimony was indisputably inadmissible, an error without which the Petitioner would have been either judicially acquitted or acquitted by the jury.

As a final note, whether the Court concentrates on the result reached by the state appellate court in evaluating this error as having violated Petitioner's right to due process and equal protection, or the violation of clearly established federal law concerning Petitioner's Sixth Amendment right to effective assistance, neither the error in this case, nor its effect, are arguably subject to alternative interpretation. Nor to any credible argument that the error could have in any way been harmless. Although Petitioner's appellate counsel did not raise this issue as 'constitutional error,' the cases upon which Petitioner relied to demonstrate the error in direct appeal proceedings contained less egregious examples of what occurred here, and all were reversed. It is clear, then, that the state court neither provided adequate review of Petitioner's trial proceedings, nor performed its function of protecting Petitioner's Due Process Rights as required. And trial counsel had a duty under the Sixth Amendment, notwithstanding the actions of the trial court, to recognize the constitutional magnitude of this error and to place the court on notice of its gravity by requesting a mistrial. If necessary, counsel should have then moved for a judgment of acquittal.

Had counsel moved for a mistrial, there is a reasonable probability the trial court would have been obliged to agree that its discretion did not permit it to allow Detective's Only's opinion testimony, and that the effect of it's improper admission required a mistrial. If not, after the verdict, when the jury's question further demonstrated the jury's uncertainty regarding H.S.'s credibility, had counsel moved for a directed verdict, there is a reasonable probability that the trial court would have recognized that the only way to cure the error would be to remove its effect by granting the motion.. That is, for the court to direct the verdict the jury would have reached absent the

4

improper bolstering of the only witness who claimed to have seen Petitioner with a firearm, which , of course, would have changed the outcome of the proceedings.

**Exhaustion**

Petitioner established the factual basis for this claim as trial court error in Petitioner's direct appeal, (Florida First DCA Case No.: 1D15-5884). He did not re-raise this ground in collateral review proceedings. The claim is presented for consideration herein under *Martinez v. Ryan,* 566 U.S. 1 (2012), which provides an equitable exception to the *Coleman v. Thompson* 501 U.S. 722 (1991) prohibition against ineffective assistance of post-conviction counsel (or lack of post-conviction counsel) establishing cause to excuse  procedurally defaulted claims.

## GROUND TWO

PETITIONER'S FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS
AND EQUAL PROTECTION WERE VIOLATED WHEN TRIAL COURT
PERMITTED THE STATE TO IMPEACH ITS OWN WITNESS WITH
EXTRINIC EVIDENCE OF ANOTHER WITNESS

Trial counsel's performance fell below an objective standard of reasonableness when counsel failed to seek a mistrial or a directed verdict based upon a violation of Petitioner's Fourteenth Amendment rights to Due Process and Equal Protection in response to the permitting the State to impeach its own witness with hearsay upon hearsay testimony by another state witness. The reporting victim in this case, Ms. McDaniel was deceased at the time of trial.

The State presented two witnesses who were present during the events that led to the charges: H.S., Ms. McDaniel's son, testified that he could only remember the events of that day "a little bit." He also told the jury that he identified Petitioner in a police photo line up, which was later disproven. He was never provided with a photo lineup, and much of his other testimony was inconsistent as to his vantage point, his action when putatively seeing a man with a gun, and the chronology of how events unfolded. It bears repeating that although H.S. was the only witness who said he saw a man with a gun, he could not identify Petitioner before or after trial.

The State's other witness, Ms. Viltz, was Ms. McDaniel's next-door neighbor. Ms. Viltz  recognized the Petitioner from high school. She testified that she never saw a gun, and that Petitioner and Ms. McDaniel were only talking, not arguing. She overheard children yelling, but she could not remember anything they said. It was established through H.S.'s testimony that Ms. Viltz was closer to Petitioner and Ms. McDaniel than H.S., and in a better position to observe them. After repeated questioning by the State, Ms. Viltz consistently confirmed that she

could not remember what the children had been yelling and could not remember speaking to Detective Only on the issue.

Then on direct, the Prosecutor asked Detective Only if he spoke to Ms. Viltz, and if she told him what she overheard the children yelling. The defense objected on the basis that the State's question would elicit hearsay upon hearsay upon hearsay, for which there was no exception in the Evidence Code. The State argued that Detective Only's testimony would be admissible because the children's statements were excited utterances. The defense responded that the question was improper impeachment, Ms. Viltz did not not made a prior inconsistent statement, but only stated she could not remember what she told Detective Only. The trial court overruled the objection and the following exchange occurred:

> STATE:            Detective Only, did Ms. Viltz indicate to you what she heard those children yelling?
>
> DET. ONLY:        She said one of the kids said something about he has a gun.

Adding to the impact of the error was the State's repeated emphasis to the jury that Ms. Viltz overheard the children yelling that the Petitioner had a gun. Indeed, in closing, the Prosecutor told the jury that Ms. Viltz was reluctant to testify because she saw Petitioner put a gun in Ms. McDaniel's face, and that when she asked Ms. Viltz what the children had been yelling "she wouldn't tell me." But Ms. Viltz portrayed no unwillingness to testify. She merely stated that she could not remember what the children had been yelling. The State's use of Detective Only's improperly introduced impeachment testimony as substantive evidence was not permitted, even had it been admissible.

The jury struggled with the credibility of H.S., the State's principal witness. Ms. Viltz did not make a prior inconsistent statement which would have opened the door for her to be impeached with Detective Only's corroboration of H.S.'s testimony, which directly contributed to Petitioner's conviction. Trial counsel did not seek a mistrial or a directed verdict which were the only reasonable responses to such a severe violation of Petitioner's rights to Due Process and Equal Protection. Absent this error, the Petitioner would not have been convicted. Had trial counsel moved for either a mistrial or a directed verdict, there is a reasonable probability the trial court would have recognized the magnitude of the error, and corrected the effect of Detective Only's improperly admitted testimony by either ordering a mistrial, or by directing a verdict of acquittal. Thus, because the state appellate court failed to correct a clear violation of Petitioner's constitutional rights, and because trial counsel did not render effective assistance under the Sixth Amendment, a writ of habeas corpus should issue as to this ground.

**Exhaustion**

The factual basis for this ground was established in Petitioner's direct appeal, (Florida First DCA Case No.: 1D15-5884). Petitioner did not re-raise this ground in collateral review proceedings, it is presented herein under *Martinez v. Ryan,* 566 U.S. 1 (2012), which provides an equitable exception to the *Coleman v. Thompson* 501 U.S. 722 (1991) prohibition against ineffective assistance of post-conviction counsel (or lack of post-conviction counsel) establishing cause to excuse  procedurally defaulted claims. Petitioner was not represented by legal counsel in initial review collateral proceedings, and was unable to identify and properly present this meritorious issue therein.

### <u>GROUND THREE</u>

PETITIONER'S FOURTEENTH AMENDMENT RIGHTS TO DUE PROCESS AND EQUAL PROTECTION WERE VIOLATED BY TRIAL COURT'S DENIAL OF PETITIONER'S MOTION FOR JUDGMENT OF ACQUITTAL.

**Supporting Facts**

The Petitioner's Fourteenth Amendment rights to Due Process and Equal Protection were violated when the trial court abused its discretion by denying Petitioner's motion for judgement of acquittal at the conclusion of the State's case. There was not enough evidence in the light most favorable to the State that Petitioner actually possessed a firearm for the case to have been submitted to the jury.

In order to the convict the Petitioner of possession of a firearm by a convicted felon, the State had the burden to prove that he had a prior felony conviction and that he knowingly had a firearm in his care and possession. The parties stipulated to Petitioner's past felony conviction, but there was no direct—and only weak circumstantial—evidence that Petitioner ever possessed a firearm on the date in question.

To prove that Petitioner possessed a firearm, the State relied on two witnesses: (1) 12-year old H.S., who was 10 at the time he purportedly observed the events about which he testified at trial; and (2) Ms. Viltz, who lived next door to H.S. and his mother Ms. McDaniel.

Ms. Viltz observed the Petitioner speaking with Ms. McDaniel, but the two were not arguing and she did not see a gun. She did not call the police. H.S. claimed to have observed a bald, black man in a brown truck who possessed a firearm. He did not provide investigating officers a description of the man's clothing, a description of the man's face, the man's build, or what time of the day he saw the man. No evidence was adduced at trial that Petitioner ever owned or had access to a brown truck. In fact, the police reports in this case identify the Petitioner's vehicle as being gold in color.  No firearm was ever found in Petitioner's actual or constructive possession of by investigating officers. There was no evidence that Petitioner was the only black man who came to Ms. McDaniel's

7

house on December 7, 2013. And, where H.S.'s testimony was not consistent with the testimony of Ms. Viltz—who *was* able to identify the Petitioner, who did not see him arguing with Ms. Daniel, (as H.S. testified the black man he saw had done), who was in a better position to observe Petitioner than H.S., and who *did not* see a gun—the circumstantial evidence was not sufficient for the case to go to the jury.

**Exhaustion**

Petitioner raised this issue on direct appeal. Although he acknowledges that his appellate counsel did not clearly set forth the claim in its constitutional dimension, the state court's appellate decision was a clear departure from well-settled law, a violation of Due Process. The appellate court failed to correct the violation of his constitutional rights. He did not raise this issue in collateral proceedings. The appellate court silently affirmed Petitioner's conviction, so there is no decision setting forth the state's rationale in deciding his claim adversely. Because the denial of his motion for judgment of acquittal violated his rights to Due Process and Equal Protection, however, habeas corpus should issue.

<u>**GROUND FOUR**</u>

> PETITIONER'S Sixth AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF HIS COUNSEL WAS VIOLATED WHEN TRIAL COUNSEL FAILED TO OBJECT TO PROSECUTOR'S STATEMENT OF FACTS NOT IN EVIDENCE AND REQUEST A MISTRIAL

**Supporting Facts**

Trial counsel's performance and representation fell below an objective standard of reasonableness when counsel failed to object and request a mistrial based upon the prosecution's repeated use of improperly admitted impeachment testimony as substantive evidence, and repeated references to facts not in evidence. Under clearly established federal law Petitioner was deprived his Sixth Amendment right to the effective assistance of counsel as a result of counsel's failure.

At trial, Ms. Viltz—a state witness—testified that she did not see the Petitioner arguing with Ms. McDaniel, and that she did not see a firearm in Petitioner's possession. Ms. Viltz was also asked if she overheard children yelling as she unloaded her groceries and what the children were saying. She remembered the children yelling, but repeatedly insisted that 2 years later she could not remember anything they said. As noted in Ground 2 of this petition, faced with prosecution witness who offered solely exculpatory testimony, the State succeeded in convincing the trial court to permit Ms. Viltz to be impeached with hearsay upon hearsay testimony by Detective

8

Only that he had spoken to Ms. Viltz during his investigation and that she had told him she overhead one of the children say "he has got a gun."

The error in permitting Detective Only to give inadmissible hearsay testimony was itself independently sufficient to warrant habeas relief because the evidence was admitted in direct contravention of Florida's evidence code—a violation of due process that directly contributed to Petitioner's conviction. The Prosecutor's improper use of this evidence during closing arguments, however, compounded the effect of the error, rising also to the level of a constitutional violation.

The State called Ms. Viltz for the purpose of establishing Petitioner's presence at the scene, (something he readily confirmed to law enforcement—only telling them he had not possessed a firearm), and to elicit testimony that Ms. Viltz overheard children yelling, and that one of the children had used words to the effect of "he has got a gun." When Ms. Viltz testified, however, she could not remember any specific comments made by the children. Frustrated by Ms. Viltz's lack of recollection, the Prosecutor questioned her rigorously on the issue. When she failed to elicit desired responses from Ms. Viltz, the State did not then ask her about statements she made to Detective Only or allow Ms. Viltz to address the prior statement as required. Instead, she used hearsay testimony from Detective Only to impeach Ms. Viltz with evidence that she had told the detective she overheard a child say "he has got a gun." This error was complained of in Ground One.

Then, in closing arguments, the State made the following statements to the jury:

> The witness's accurate memory. And [H.S.] was ten years old at the time, and he told you exactly what he remembered and why he was scared, and this is something that a ten-year old would remember, someone coming with a firearm scaring him so that he drops his basketball game and runs, **children yelling, he has got a gun.**

The only testimony at trial that any witness to these events ever said "he has got a gun" came from impeachment testimony of Detective Only attributing to Ms. Viltz, *her* attribution of this comment to children at the scene. The State used this impeachment testimony as substantive evidence. Worse, the evidence was used to bolster the credibility of H.S., the only witness who claimed to have seen someone possess a firearm to have testified. And the comment can also be fairly interpreted as attributing the words "he has got a gun," to H.S. himself, which was misleading.

Then in rebuttal closing the Prosecutor stated:

> You heard some confusion in the testimony about where he was standing, but guess what? What matters was the (inaudible) Jon Cohen possessed a firearm, Jon

> Cohen actually possessed a firearm on December 7, 2013 when the children ran yelling, **He's got a gun. . .**

And,

> But let's talk about what Shantel Viltz told you. She told you that she heard these kids yelling, and when I asked her what they were yelling, **she wouldn't tell me, but she told the officers when they came to her when she was reluctant to speak what they said. He has a gun, that is what those kids were yelling.** Why would Shantel Viltz not want to say that? Because this is real life where a man walked up to a woman and stuck a gun in her face. Do you really think that Shantel Viltz wanted to point the finger too? This is real life.
>
> They talked to you about how [Ms. Viltz] testified that she never saw a gun. She also wasn't looking for a gun. **She told you that her back was to where Lawanna McDaniel and Jon Cohen were arguing away. She heard that argument going on,** and she continued to get her groceries and go inside her residence because nobody was talking to her. **That is what she told you.** She didn't want to get involved.

The above comments were particularly egregious. They not only demonstrate the State's continued use of Detective Only's impeachment testimony as substantive evidence, but they also rely on facts not in evidence. Ms. Viltz never told the jury that Petitioner and Ms. McDaniel were "arguing away." She told them the opposite: that the two were not arguing.

Then:

> Shantel Viltz cam in here and she showed you exactly what we wanted her to show you, she didn't want to be here, she is reluctant to speak with us, she is reluctant to speak to the police. Why? **Because she saw that man put a gun in a woman's face.**

This comment was a departure from the Prosecutor's ethical duty to restrict herself to arguing only facts properly adduced in evidence. Ms. Viltz testified that she never saw a gun. She never said that she saw Petitioner put a gun in anyone's face, and no valid inference from her testimony supports the Prosecutor's statement above. The inference was the product of Detective Only's improperly admitted impeachment testimony.

As previously noted, the jury clearly struggled with H.S.'s credibility. They asked to see the original complaint by Ms. McDaniel, in a clear attempt to compare the allegations therein with the story they got from H.S. Trial counsel had a duty to object and to request a mistrial because the Prosecutor's comments tainted the fairness of the trial to extent that a curative instruction would not have been sufficient to ameliorate the impact of the error. Counsel's failure to object and seek a mistrial was deficient performance that did not comport with prevailing professional norms in 2015.

10

Petitioner was prejudiced by counsel's failure to object and seek mistrial. But for the errors above the outcome of the proceedings would have been different. Had counsel reiterated the impropriety of admitting Detective Only's testimony and emphasized that the rule forbidding its admission is intended to ensure that jury will not view it as substantive evidence, there is a reasonable probability that the trial court would have acknowledged the effect of its previous error, which, along with the prosecutor's misconduct, vitiated the fairness of Petitioner's trial to an extent requiring mistrial. Thus, because the Petitioner's Sixth Amendment right to effective assistance and to a fair trial were violated by counsel's unprofessional errors, habeas should issue as to this ground.

**Exhaustion**

This ground was neither raised on direct appeal, nor in Petitioner's collateral motion for post-conviction relief. It is presented herein under *Martinez v. Ryan,* 566 U.S. 1 (2012), which provides an equitable exception to the *Coleman v. Thompson,* 501 U.S. 722 (1991), prohibition against ineffective assistance of post-conviction counsel (or lack of post-conviction counsel) establishing cause to excuse procedurally defaulted claims. Petitioner was not represented by legal counsel in initial review collateral proceedings, and was unable to identify and properly present this meritorious issue therein.

**<u>GROUND FIVE</u>**

INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILURE TO INSIST
THAT STATE LAY PROPER PREDICATE FOR IMPEACHING MS. VILTZ
WITH OFFICER TESTIMONY

Counsel's performance and representation fell below and objective standard of reasonableness under clearly established federal law when counsel failed to object to the prosecution's failure to properly lay a predicate for impeaching Ms. Viltz with testimony by Detective Only. Counsel raised an objection to Detective Only's testimony as inadmissible hearsay, but did not put the trial court on notice that the Detective's testimony was also inadmissible under section 90.614(2), Florida Statutes (2015), which states, in pertinent part:

> Extrinsic evidence of a prior inconsistent statement by a witness is inadmissible
> unless the witness is first afforded an opportunity to explain or deny the prior
> statement and the opposing party to interrogate the witness on it.

Use of a prior inconsistent statement is the primary method used to attack credibility of a witness and is authorized by section 90.608(1), Florida Statutes. However, a witness must first *make* a prior inconsistent statement. If that occurs, the witness may then be impeached. Here, Ms. Viltz testified that she did not remember what, if anything the children had yelled on December 7, 2013.

11

The prosecution then used testimony by Detective Only to impeach Ms. Viltz with statements she made to him during his investigation that she told him one of the children yelled "he has a gun." As noted throughout this petition, this was improper impeachment, and was constitutional error. The prosecution was required, under section 90.614(2), to afford Ms. Viltz and opportunity to explain or deny any statement that the Prosecutor felt was inconsistent with statements she had previously made to the Detective. This did not occur, and counsel did not object. The failure to do so was deficient performance that did not comport with prevailing professional norms in 2015. Moreover, as noted in Petitioner's Fla. R. Crim. P. 3.850 motion for post-conviction relief, the Prosecutor then used Detective Only's impeachment testimony as substantive evidence of Petitioner's guilt, resulting in a fundamentally unfair verdict.

When Detective Only took the stand and the Prosecution began to question him about prior statements made to him by Ms. Viltz, defense counsel objected based on hearsay. This valid objection was overruled by the trial court. Counsel had a separate, legally valid basis, however, upon which to object: The State failed to lay a proper predicate for impeaching Ms. Viltz by affording her an opportunity to confront any statement she was purported to have made before trial. Petitioner was prejudiced by counsel's failure to object on this additional basis. Had he done so, there is a reasonable probability the trial court would have ruled that Detective Only could not testify regarding any statement made to him by Ms. Viltz based upon the State's deviation from required procedure under the Florida Evidence Code. This would have removed the state's ability to later use Detective Only's testimony as substantive proof of Petitioner's guilt, changing the outcome because the testimony directly contributed to the jury's verdict. Accordingly, because Petitioner was deprived of his Sixth Amendment right to the effective assistance of counsel, a writ of habeas corpus should issue as to this ground.

**Exhaustion**

This claim was raised in the Petitioner's Fla. R. Crim. P. 3.850 motion for post-conviction relief as an ineffective assistance of trial counsel claim under *Strickland v. Washington,* 466 U.S. 668 (1984). He appealed from the denial of the claim to the Florida  First District Court of Appeal which *per curiam* affirmed without an opinion. (Case no. 1D18-4851). Accordingly, this claim was properly exhausted; it is timely, and ripe for federal review.

12

## GROUND SIX

THE CUMULATIVE IMPACT OF THE ERRORS DEPRIVED PETITIONER
OF THE FAIR PROCEEDING TO WHICH HE WAS CONSTITUTIONALLY
ENTITLED

This case presents a combination of preserved errors Petitioner raised on appeal, and errors of his trial counsel. Under the totality of the circumstances, Petitioner's trial did not produce a result that this Court should deem reliable. Petitioner is entitled to, and requests, a cumulative impact determination irrespective of the Court's conclusions regarding the prejudicial impact of his individual claims. The Court should examine all the complained-of errors, and particularly how they interrelated and combined to deny Petitioner a fair proceeding.  At Petitioner's trial

A:       A police officer was permitted to improperly give opinion testimony that bolstered the weak credibility of the state's principal witness;

B:       The same police officer was permitted to give extrinsic impeachment testimony regarding purported statements made to another state witness, who could not remember having made the statements attributed to her by the police officer. The officer's statements were then used as substantive evidence that also bolstered the credibility of the state's principal witness;

C:       Before impeaching its own witness with extrinsic testimony by a police officer, the State did not afford the witness an opportunity to address, explain or deny any statements she allegedly made as required under the Florida Evidence Code.

D:       The evidence was not sufficient for the case to be submitted to the jury, yet the trial court denied the defense motion for judgment of acquittal;

E:       In addition to using improperly admitted impeachment evidence as substantive evidence in closing, the Prosecutor relied on facts not in evidence multiple times in closing and entreated the jury to convict based upon sympathy.

The credibility of the State's principal witness was highly questionable. He only remembered the events about which he testified "a little bit." And his version of events was squarely at odds with the only other eyewitness on the scene. Recognizing the weakness of H.S.'s testimony, the Prosecutor called Shantel Viltz to testify that she heard several children yelling when Petitioner was speaking with Ms. McDaniel, and that she heard one of the children yell "he has got a gun." But at trial, Ms. Viltz could not recollect anything the children said. The Prosecutor

13

did not seek to refresh Ms. Viltz's memory as required by Florida law. Instead, she called Detective Only to impeach Ms. Viltz with comments she purportedly made to him during his investigation. These errors alone required reversal, but they were compounded by the State's repeated used of Detective Only's impeachment testimony as substantive evidence during closing arguments. Additionally, the Prosecutor's closing arguments were peppered with improper bolstering, with entreaties to the jury to convict Petitioner based on sympathy for H.S., and with statements of facts not in evidence. The Prosecutor told the jury, in essence, that despite any understandable reservations it might have regarding H.S.'s credibility, it should nevertheless convict Petitioner because Ms. Viltz's statements to Detective Only *proved Petitioner had a firearm.* All of this was based on the original improperly admitted impeachment testimony of a police officer. Defense counsel could not control the trial court's error in admitting Detective Only's testimony. Counsel could have, however, objected when the Prosecutor repeatedly deviated from acceptable practices in closing. He did not. Accordingly, the full prejudicial impact of the evidence was not mitigated in any way by a curative instruction or a mistrial. Petitioner's Sixth Amendment right to the effective assistance of counsel was violated, as were his rights under the Fourteenth Amendment. This court should find that combined impact of the errors in this case renders the verdict unreliable. A writ of habeas corpus should issue as to this ground.

**Exhaustion**

This claim of cumulative impact error was raised in the Petitioner's Fla. R. Crim. P. 3.850 motion for post-conviction relief as an ineffective assistance of trial counsel claim under *Strickland v. Washington,* 466 U.S. 668 (1984). He appealed from the denial of the claim to the Florida First District Court of Appeal which *per curiam* affirmed without an opinion. (Case no. 1D18-4851). Accordingly, the claim is properly exhausted; it is timely, and ripe for federal review.

**Additional Questions**

1.      The grounds presented in this petition were exhausted in state court proceedings, with the exceptions of grounds One, Two, and Four, which are presented pursuant  to *Martinez v. Ryan,* 566 U.S. 1 (2012).

2.      No previous federal petitions, applications or motions have been filed by Petitioner pertaining the judgment and sentence under attack.

3.      There are no petitions, applications, or motions pending in any state court proceeding pertaining to the judgment and sentence under attack.

14

4.    Give the name and address of every attorney who represented Petitioner in the following stages of the proceeding:

| | | |
|---|---|---|
| a. | At preliminary hearing | Unknown |
| b. | At arraignment and plea | Unknown |
| c. | At trial | Adam William Joseph Beaugh<br>407 N. Laura Street<br>Jacksonville, Florida 32202 |
| d. | At sentencing | Same |
| e. | On Appeal | Diana L. Johnson<br>Fla. Bar. No. 0035949<br>1010 East Adams Street<br>Suite 2050<br>Jacksonville, Florida 32202<br>(904) 513-3905 |

f.    Petitioner represented himself *pro se* in post-conviction proceedings.

g.    Petitioner represented himself *pro se* on appeal from the denial of his state court motion for post-conviction relief.

5.    Petitioner is not required to serve any future sentence after or during the service of the sentence under attack in this Petition.

**TIMELINESS OF PETITION**

This petition is timely filed. Petitioner was sentenced on December 3, 2015. He timely appealed from the judgment and sentence, which was affirmed on May 7, 2017. Petitioner did not seek certiorari with the 90 days designated for doing so. His federal time under the AEDPA began to run on August 5, 2017.

Petitioner filed his post-conviction motion 276 days later, leaving 89 days to file. Petitioner's time did not resume until the affirmance of his appeal from the denial of his post-conviction motion. The appeal was *per curiam* affirmed on August 29, 2019 and his motion for written opinion on September 9, 2019, was denied on October 17, 2019. The mandate issued on November 7, 2019. As January 2, 2019, Petitioner had 1 day remaining on his federal clock.

**WHEREFORE,** Petitioner asks this court to issue a writ of habeas corpus, vacating the judgment and sentence entered in the state court, with instructions that he be granted a new trial. Any other relief which the Court deems just and proper is also respectfully requested.

15

Respectfully submitted,


/s/ W. Charles Fletcher
W. Charles Fletcher
Fla. Bar. No. 0125792
Law Office of W. Charles Fletcher
8833 Perimeter Park Blvd. Ste. 104
Jacksonville, Florida 32216
(904) 349-6818

## OATH

I DECLARE UNDER PENALTY OF PERJURY that I have read the foregoing, and that the information contained herein is true and correct.


/s/ Jon Cohen
Jon Cohen
#

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Petition for Writ of Habeas Corpus has been furnished electronically to the parties listed below via CM/ECF.

Florida Attorney General


/s/ W. Charles Fletcher
W. Charles Fletcher
Fla. Bar. No. 0125792

16